U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUN -9 PM 4:47

CLERK
BY [signature]
DEPUTY CLERK

2:21-cv-154

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

100 BANK, LLC,
Plaintiff

v.

BTC MALL ASSOCIATES, LLC; CITY OF BURLINGTON; THE BURLINGTON DEVELOPMENT REVIEW BOARD; CAITLIN HALPERT, in her official capacity; BROOKS McARTHUR, in his official capacity, SEAN MCKENZIE, in his official capacity, BRADFORD L. RABINOWITZ, in his official capacity; HARRIS SPRINGER, in his official capacity; SCOTT GUSTIN, in his official capacity,
Defendants

and

BRADLEY M. BIGGIE, in his official capacity; KIM IANELLI, in her official capacity,
Relief Defendants

## COMPLAINT

### Nature of Action

1. The City of Burlington cannot be a judge in its own case. As part of their Amended Development Agreement, the City of Burlington and BTC Mall Associates, LLC ("BTC") agreed to reconnect Pine Street in downtown Burlington. There was only one problem; the proposed road ran straight through 100 Bank, LLC's ("100 Bank") property. 100 Bank has tried for more than four years to negotiate some fair resolution to its dispute and to allow the economic development in downtown Burlington to occur. Rather than talk to 100 Bank, BTC

gravel & shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

has resorted to using the City of Burlington's zoning process to deprive 100 Bank of the fundamental protections of property rights that the United States Constitution grants all citizens.

2. The City of Burlington has only added to the number and severity of the violations of 100 Bank's constitutional rights. Because the City of Burlington stood to benefit from its Amended Development Agreement with BTC, it could not be the judge of BTC's permit application. The City's interested position compromised every part of the Development Review Board's proceedings. On numerous occasions, the City failed to provide 100 Bank with proper notice. The City failed to provide 100 Bank a critical written decision that it made and that 100 Bank did not know existed. The City's salaried employees drafted the decision for the supposedly independent Development Review Board ("DRB"), but acted under an irresolvable conflict of interest when it drafted the decision.

3. This is an action to protect 100 Bank's constitutional rights to be free of the illegal condemnation of private property, to receive due process of the law, and to protect its right to access the judicial system.

## Parties

4. Plaintiff 100 Bank, LLC ("100 Bank") is a Vermont limited liability company.

5. BTC Mall Associates, LLC ("BTC") is the owner of the site of the former mall in downtown Burlington, Vermont.

6. The City of Burlington is a Vermont municipality.

7. The Burlington Development Review Board (the "DRB") is a municipal panel created by the City of Burlington under 24 V.S.A. § 4460.

8. Caitlin Halpert is a member of the Burlington Development Review Board and is named in this action in her official capacity.

9. Brooks McArthur is a member of the Burlington Development Review Board and is named in this action in his official capacity.

10. Sean McKenzie is a member of the Burlington Development Review Board and is named in this action in his official capacity.

11. Bradford L. Rabinowitz is a member of the Burlington Development Review Board and is named in this action in his official capacity.

12. Harris Springer is a member of the Burlington Development Review Board and is named in this action in his official capacity.

13. Scott Gustin is the Division Manager for the Zoning Division and is the Zoning Administrator for the City of Burlington and is named in this action in his official capacity. Mr. Gustin is an employee of the City of Burlington and draws his salary from the City.

14. Bradley M. Biggie is one of two Building Inspectors for the Department of Permitting and Inspections the City of Burlington and is named in this action in his official capacity. Building inspectors have the power to issue construction permits that implement the decisions of the Development Review Board. Mr. Biggie is an employee of the City of Burlington and draws his salary from the City. He is a relief defendant.

15 Kim Ianelli is one of two Building Inspectors for the Department of Permitting and Inspections the City of Burlington and is named in this action in her official capacity. Ms. Ianelli is an employee of the City of Burlington and draws her salary from the City. She is a relief defendant.

Jurisdiction and Venue

16. This Court has jurisdiction pursuant to 28 U.S.C. §1331. The federal issues include resolution of a Fifth Amendment illegal takings claim, a variety of Fifth and Fourteenth






A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

Amendment Due Process claims, and an access to the judicial system claim under the First, Fifth, and Fourteenth Amendments.

17. This Court may enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

18. Venue lies in this jurisdictional district pursuant to 28 U.S.C. § 1391(b).

## Facts

### Burlington Fails To Provide 100 Bank With Notice And A Copy Of Relevant Decisions

19. Vermont statutory law authorizes local municipalities to engage in zoning in their jurisdictions and regulate land development. *See* 24 V.S.A. Chapter 117.

20. One significant restriction on local zoning is found in 24 V.S.A. § 4302, which requires that "[i]n implementing any regulatory power under this chapter, municipalities shall take care to protect the constitutional right of the people to acquire, possess, and protect property." 24 V.S.A. § 4302. This restriction creates a property interest for 100 Bank.

21. 24 V.S.A. Chapter 117 also creates a property interest in the right to participate in matters affecting property owners on and near a proposed project. 24 V.S.A. § 4464 (a)(1)(C) and 4464(a)(2)(B) create obligations to notify parties like 100 Bank and created property interests for 100 Bank.

22. BTC used the City of Burlington zoning process to deprive 100 Bank of its Constitutional rights to notice and an opportunity to be heard, to a neutral decision maker, its right to receive judicial decisions, and the right to be free from illegal seizure of private property.

23. On September 3, 2020, BTC sent a letter to the Burlington DRB stating that:

> Please be advised that BTC Mall Associates, LLC, Devonwood Investors, LLC and their associated and affiliated entities ("BTC"), hereby abandon, withdraw and relinquish the submission to the Burlington Planning & Zoning Department for the Burlington Town





A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

> Center project, as approved by the Burlington Development Review Board decision for File No. ZP17-0662 CA/MA, dated March 17, 2017, as modified by the Judgement Order dated July 17 2018 in the matter captioned *Devonwood Investors, LLC,* 75 Cherry St., Docket 38,4, 17 Vtec.

(the "Abandonment Letter").

24. The City of Burlington illegally treated the Abandonment Letter as a matter for the Zoning Administrator to decide. Under Burlington's Comprehensive Development Ordinance, the Zoning Administrator has no authority to decide the abandonment issue.

25. The City of Burlington also failed to provide 100 Bank notice of any proceeding involving the abandonment of the permits for City Place.

26. On September 14, 2020, Scott Gustin sent an e-mail to BTC and its representatives purporting to find that BTC could not abandon its permit ("September 14, 2020 Decision").

27. Because Mr. Gustin's decision purported to be an official act by a City official with authority to decide, it represented the official policy of the City of Burlington. 100 Bank did not receive notice of this purported decision.

28. Mr. Gustin's decision not to provide notice to 100 Bank was also an official policy of the City of Burlington.

29. This policy caused 100 Bank to be subject to violations of its constitutional rights to due process under the Fourteenth Amendment of the United States Constitution.

30. On September 28, 2020, BTC's lawyers filed an appeal of the purported September 14, 2020 Decision ("September 28, 2020 Appeal").

31. On October 19, 2020, BTC filed its application to amend permit No. ZP17-0662 CA/MA – the one that it had just abandoned, withdrew, and relinquished. At the time that BTC

filed its application, it was fully aware of 100 Bank's property rights because 100 Bank had informed BTC of 100 Bank's property rights in writing. That amendment did not have 100 Bank's signature on it. The Zoning Department deemed BTC's application for an amendment to be incomplete.

32. On October 23, 2020, 100 Bank requested that Mr. Gustin send them information about the City Place project: "Would you please send me the files related to the City Place Application?"

33. While Mr. Gustin provided some documents, he decided not to include the September 14, 2020 Decision on the Abandonment Letter and BTC's September 28, 2020 Appeal of his September 14, 2020 Decision.

34. On October 30, 2020, 100 Bank sent a letter to Scott Gustin, the Division Manager of the City of Burlington Zoning Division that stated that BTC could not move forward with a permit application because it had sent the September 3, 2020 letter. When 100 Bank submitted this letter, it had no knowledge of the September 14, 2020 Decision or the September 28, 2020 Appeal. Its lack of knowledge prevented it from using BTC's arguments in support of its own arguments that BTC's permit had been abandoned. It appears that the City and Mr. Gustin viewed 100 Bank's claim as somehow procedurally defaulted. Had 100 Bank had proper notice and access to relevant documents, it would have been able to assert the claim with more force and with binding application on BTC because its own support for 100 Bank's position.

35. After receiving 100 Bank's October 30, 2020 letter, Mr. Gustin had an obligation to inform them of the decision that he had rendered. Mr. Gustin's decision not to provide notice




A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

of the September 14, 2020 Decision and the September 28, 2020 Appeal was an official policy of the City of Burlington.

36. This policy caused 100 Bank to be subject to violations of its constitutional rights to due process under the Fourteenth Amendment of the United States Constitution and First Amendment right to access the Courts.

37. 100 Bank provided BTC a copy of the October 30, 2020 letter. BTC failed to provide notice of its filings, Mr. Gustin's decision, and notice of hearings on the issues to 100 Bank.

38. On November 2, 2020, BTC filed a letter in support of its appeal with the DRB over its attempt to relinquish its permit. 100 Bank was not provided notice of the appeal or that a hearing had been set to hear the appeal even though it raised that specific issue with Mr. Gustin.

39. BTC and the DRB agreed to a series of deferrals on the relinquishment issue without providing notice of the hearings where the issue of deferrals were raised. Given that 100 Bank had no notice of the original decisions by the Zoning Administrator, 100 Bank had no idea what the nature of these particular proceedings was.

40. Mr. Gustin's decisions not to provide notice of the appeal by BTC and the hearings where deferral were discussed and agreed to were official policies of the City of Burlington.

41. These policies caused 100 Bank to be subject to violations of its constitutional rights to due process under the Fourteenth Amendment of the United States Constitution and First Amendment access to the Courts.

42. On November 20, 2020, 100 Bank requested that the DRB and Scott Gustin provide it notice of any proceedings involving BTC's attempt to construct anything in

connection with the City Place development. Specifically, it stated that 100 Bank "would like to have notice of any proceeding involving the City Place Development" and that "100 Bank would like to have notice of all proceedings and any opportunity to comment at each." It also specifically noted that it had not received any ruling on the issue that it had raised in its October 30, 2020 letter. *Id.*

43. After receiving 100 Bank's letter, Mr. Gustin had yet another opportunity to make a decision about providing information to 100 Bank.

44. Mr. Gustin's decision not to provide notice of the appeal by BTC, the hearings where deferrals were discussed and agreed to, and a copy of his decision were official policies of the City of Burlington.

45. These policies caused 100 Bank to be subject to violations of its constitutional rights to due process under the Fourteenth Amendment of the United States Constitution and First Amendment access to the Courts.

46. 100 Bank provided BTC a copy of the November 20, 2020 letter. BTC failed to provide notice of its filings, Mr. Gustin's decision, and notice of hearings on the issues.

47. The DRB scheduled a hearing on the amended permit under consideration for March 3, 2021. The DRB did not provide 100 Bank's attorney with notice of the proceeding. 100 Bank only learned of the proceeding by checking the DRB website. On March 2, 2021, 100 Bank provided a letter outlining its opposition to the project proposed by BTC. The letter again noted that it had not received any notice of a decision on the issue of BTC's abandonment, withdrawal, and relinquishment of its permit. *Id.* at 2. It also noted "[c]hanges are shown on the permit drawings on 100 Bank Street Property that have not been reviewed or approved by 100 Bank, LLC." *Id.* at 5.

48. In March 2021, the DRB issued an order approving an application from BTC seeking to develop property around the former mall in downtown Burlington, Vermont, including the construction of a road on 100 Bank's property ("March 2021 DRB Decision").

49. On March 11, 2021, 100 Bank sent another written request to Mr. Gustin. It said: "Would you please send me any written decision, permit, or amendment that is issued with respect to City Place?" Mr. Gustin provided a copy of the DRB's decision, but decided to not provide his own decision on the Abandonment Letter.

50. Mr. Gustin's decision not to send a copy of his decision was an official policy of the City of Burlington.

51. This policy caused 100 Bank to be subject to violations of its constitutional rights to due process under the Fourteenth Amendment of the United States Constitution and First Amendment access to the Courts.

52. Given the many violations of 100 Bank's Constitutional rights, 100 Bank was unable to present all of its arguments in opposition to the issuance of the permit and has been put at a disadvantage in subsequent legal proceedings. 100 Bank expects that this disadvantage will continue.

53. On May 17, 2021, the Environmental Division concluded that it did not have jurisdiction to rule on issues of private property rights and set the case on a schedule to have a trial in the fall of 2021.

The City And BTC Had Common Interests In The Development Of The Project

54. In June 2017, BTC removed the final obstacle to its redevelopment of the old Burlington Mall in Burlington, Vermont. BTC marketed the redevelopment of that area as "City Place."

55. BTC then proceeded to demolish a portion of the old Burlington Mall.






A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

56. After that, BTC stopped all activity at the site of the old Burlington Mall without completing any actual construction on the site.

57. BTC's financing partner, Brookfield Asset Management, stopped providing financial and operation support for the project to develop that area.

58. One of the reasons that Brookfield stopped providing financial support was that the original design of the City Place Project was not financially feasible.

59. BTC needed a new design for City Place in order to make the City Place project financially viable and to find a financing partner. To implement a design for construction, BTC needed to obtain approval of the Burlington Development Review Board. To obtain that approval, BTC needed cooperation for the City of Burlington. Any opposition to the City Place by the City of Burlington would have doomed the City Place project.

60. Frustrated with the lack of progress in completing construction of the City Place, the City of Burlington sued BTC for breaching its Development Agreement with the City.

61. At the same time, BTC sued the City of Burlington for a declaratory judgment that it had no obligation under the existing development agreement because it had abandoned, withdrawn, and relinquished its permit under which to construct City Place. In connection with that suit, BTC sent the Abandonment Letter to Scott Gustin, the Zoning Administrator for the City of Burlington.

62. Almost immediately after the litigation commenced, BTC and the City began to discuss settlement of the case. At the time that BTC and the City discussed settlement, they were fully aware of 100 Bank's property rights because 100 Bank had informed both the City and BTC of their property rights.




gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

63. The City wanted to make sure that it obtained certain promises from BTC in order to withdraw its litigation. One issue that was very important to the City was obtaining the ability to reconnect downtown Burlington by adding two north-south streets.

64. As a part of the old Burlington Mall project, the City decided to close off two of its streets. The area where the two streets were formerly located became the property of private individuals. One of those streets, Pine Street, was in the area of where 100 Bank's property now is.

65. The City ultimately decided that it had made a mistake in closing off those streets. As part of its municipal plan, the City included the reopening of Pine Street as a goal for the City's development.

66. When the City of Burlington and BTC negotiated a settlement to their litigation, it included an obligation by BTC to donate two parcels of land that would be where the new Pine Street and Saint Paul Street extension would be.

67. BTC conveyed the property at no cost to the City.

68. Under the settlement agreement, BTC had the obligation to construct the two streets. That obligation included "reconnecting" them to the existing streets. Reconnecting Pine Street necessarily required BTC to take 100 Bank's property to build the road that it was contractually obligated to construct.

69. The City and BTC also agreed to build the streets to the high standards set for the City's "Great Streets" initiative. The City benefitted by having two experiments to demonstrate its proof of concept on the "Great Streets" initiative. Its previous attempt to implement the concept was not well received.






A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

70. The building of public streets is a function that is traditionally associated with municipalities such that BTC was acting to advance the interests of the municipality by building the reconnections of Pine Street and Saint Paul Street.

71. As part of the settlement agreement, the City committed to cooperate in good faith with BTC to facilitate the timely development of the revised project that BTC had submitted to the DRB for approval. Under the settlement, the City also undertook the obligation to provide plans satisfactory to the DRB that would guide BTC's construction of the reconnected streets.

72. In advancing the Project, the City provided significant aid to BTC's efforts to obtain DRB approval. This aid included expedited consideration of BTC's revised project.

73. The City also provided significant aid in the expertise that its various departments, including the Department of Public Works, provided to BTC.

74. Prior to the March 2021 DRB Decision, Mary O'Neil prepared a memorandum to the DRB. ("O'Neil Memorandum") The O'Neil Memorandum served as a template for the March 2021 DRB Decision. As a salaried employee of the City, Ms. O'Neil was hopelessly conflicted because of the financial gains that the City stood to receive under the Amended and Restated Development Agreement.

75. The March 2021 DRB Decision was nearly word for word identical to the O'Neil Memorandum. The DRB's "findings" were taken verbatim from the O'Neil Memorandum. As a result, the conflict that O'Neil possessed infected every aspect of the DRB's decision.

76. Nearly all of the DRB's legal conclusions suffered from the same defect as its legal conclusions were word for word identical to the words of the O'Neil Memorandum.

77. The City Attorney had to offer advice to the DRB even though the Attorney was hopelessly conflicted because of all of the obligations that the City had undertaken in the






A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

settlement with BTC. The City Attorney could not offer serious advice against the approval of the revised project without placing the City in significant financial peril.

78. BTC became an agent for the City by using the zoning process to obtain approval to build two streets that it would then turn over to the City. BTC used the zoning process to advance the City's land acquisition and development goals.

79. The revised project was materially different from the original project in many respects including, without limitation, a significant reduction in the amount of parking. The reduction in the amount of parking had a significant negative effect on 100 Bank because 100 Bank has the right to 100 spaces of parking on BTC's land due to an easement.

80. Given the many obligations and opportunities for material enrichment in the settlement agreement, the City was hopelessly conflicted in both supporting BTC's DRB application and purporting to provide neutral advice to the DRB and purported neutral decision-making through the Zoning Administrator and the DRB.

81. The City Council for Burlington reviewed and approved the settlement agreement documents in a formal vote. That vote made the contents of the agreement official government policy.

82. The settlement agreements requiring that Pine Street be reconnected over 100 Bank's property caused 100 Bank to be subjected to a denial of its Constitutional right to be free from a Constitutional Taking.

<u>Lacking Any Condemnation Power, The DRB Authorized A Taking Of 100 Bank's Property</u>

83. 100 Bank owns the property on and near where the building at 100 Bank Street is located.

84. Despite 100 Bank's ownership of the property, BTC proposes to develop 100 Bank's property in connection with its project at City Place in Burlington. BTC submitted a full set of architectural plans showing how it would construct the City Place project.

85. The drawings that BTC submitted to the DRB show that BTC is developing 100 Bank's property as shown in the image below:




Plat Plan: Lot Line Adjustment for BTC Mall Associates, LLC, Latitudes Land Survey ("Plat Plan"). Zoning Department requested that the applicant add the Plat Plan to the set of plans submitted to the Board. *Id.*



gravel & shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

86. BTC is developing 100 Bank's property by building a road on, through, and below BTC's property:




Site Plan, C-103.

87. The DRB authorized the construction of the Pine Street extension on, through, and under 100 Bank's property.

88. The DRB knew that it was approving the construction of a road because it discussed it in its conditions for the permit: "As new public streets are included in this project, procedures for acceptance outlined in Sec. 10.1.12, Dedication of Public Streets, must be followed."

89. Through its standard conditions included in every permit, the DRB incorporates all the plans submitted by the Applicant into its order. Those plans include the plans described above that show the road being built on 100 Bank's property.

gravel & shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

90. The invasion is not a minor invasion. The road occupies approximately 18.66% of the square footage of 100 Bank's property. Additional square footage is consumed by other improvements that BTC seeks to build on 100 Bank's property.

91. 100 Bank does not consent to the use of its property in the manner proposed by BTC. 100 Bank has made BTC aware of 100 Bank's property rights for years. 100 Bank has been attempting to negotiate in good with BTC for years.

92. In addition to the plans submitted to the DRB, 100 Bank has repeatedly informed the City of its property rights.

93. 100 Bank never signed any permit application submitted by BTC.

94. The DRB never ruled on the issue of whether BTC had withdrawn, abandoned and relinquished its original permit.

COUNT I
42 U.S.C § 1983 – Due Process

95. 100 Bank re-alleges and incorporates by reference the previous number paragraphs.

96. Through their various decisions to not provide notice to 100 Bank and to not provide 100 Bank with their decisions, which are discussed elsewhere in the Complaint, Defendants deprived 100 Bank of its Constitutional right under the Fourteenth Amendment to notice and an opportunity to be heard.

97. Mr. Gustin, the DRB Defendants, and BTC all acted under color of state law in depriving 100 Bank of its Constitutional right under the Fourteenth Amendment to notice and an opportunity to be heard.

98. Through its official policies described elsewhere in the Complaint, the City of Burlington violated 100 Bank's Due Process rights by failing to provide notice of the relevant proceedings.

99. Through its official policies described elsewhere in the Complaint, the City of Burlington violated 100 Bank's Due Process rights by purporting to act on BTC's Abandonment Letter even though the City Administrator had no authority to act on it.

100. Through its official policies described elsewhere in the Complaint, the City of Burlington violated 100 Bank's Due Process rights by acting as a decision maker in an action in which it had a pecuniary interest and faced significant liability if a breach of the agreements occurred.

101. The City of Burlington acted under color of state law.

102. Because the DRB March 2021 Decision relied heavily on the O'Neil Memorandum and the legal advice of City of Burlington's staff attorney, the DRB March 2021 Decision was hopelessly conflicted by the City of Burlington's financial interests.

103. 100 Bank has a property interest in its fee simple title to its land – perhaps the most traditional "property interest" that exists.

104. 100 Bank also has a property interest in the Vermont statutes that protect its right to participate in DRB hearings to protect its fee simple title.

105. 100 Bank was deprived of its property interests without due process of law.

106. 100 Bank suffered damage the Defendants' violation of its Due Process rights, including infringement of its traditional property rights, being unable to make certain legal arguments in a timely and efficient manner, incurring excessive attorney's fees, and enduring

actual invasion of its physical property by BTC. BTC's physical invasions include its agents coming onto 100 Bank's property to alter physically 100 Bank's building.

COUNT II
Section 1983 - Illegal Taking

107. 100 Bank re-alleges and incorporates by reference the previous number paragraphs.

108. Mr. Gustin, the DRB Defendants, and BTC violated 100 Bank's right to be free from a Constitutional taking.

109. 100 Bank had a protected property interest in its fee simple land on which the DRB approved construction of a road.

110. The actions of Mr. Gustin, the DRB Defendants, the City of Burlington and BTC have taken a portion of 100 Bank's protected property interest under color of state law without just compensation.

111. Through their various decisions and actions, Mr. Gustin, the DRB Defendants, and BTC deprived 100 Bank of its Constitutional right to be free from illegal government takings.

112. Through its official policies, the City of Burlington deprived 100 Bank of its Constitutional right to be free from illegal government takings.

COUNT III
Section 1983 – First Amendment Access to the Court

113. 100 Bank re-alleges and incorporates by reference the previous number paragraphs.




gravel & shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

114. Mr. Gustin, BTC, and other unknown personnel violated 100 Bank's rights to access to the judicial system by failing to provide a copy of the Gustin decision on the Abandonment Letter.

115. Mr. Gustin, BTC, and other unknown personnel acted under color of state law in denying 100 Bank access to Mr. Gustin's decision on the Abandonment Letter.

116. Mr. Gustin, BTC and other unknown personnel acted deliberately in deciding not to provide copies of Mr. Gustin's decision to 100 Bank.

117. 100 Bank suffered injury because it was unable to use BTC's own position to persuade the DRB that BTC had abandoned, withdrawn, and relinquished its permit.

## Claims for Relief

WHEREFORE, Plaintiff prays that judgment be entered in its favor for the following relief:

A. A declaration that it owns certain property as set forth in the ALTA Survey;

B. An injunction barring Defendants from entering 100 Bank's property;

C. An order barring the officials from building a road on 100 Bank's property;

D. An order barring the Building Inspector Defendants from issuing a permit that would invade 100 Bank's property rights;

E. Damages;

F. Punitive Damages;

G. An order awarding attorneys' fees and costs; and

H. Such other and further legal and equitable relief as this Court deems just and proper.






A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

**JURY DEMAND**

**Plaintiff demands trial by jury of all issues so triable.**

Dated: Burlington, Vermont
June 9, 2021

for: Matthew B. Byrne, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
mbyrne@gravelshea.com
For Plaintiff



gravel & shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369