UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| 100 BANK, LLC<br>　　Plaintiff,<br><br>　　　v.<br><br>BTC MALL ASSOCIATES, LLC;<br>CITY OF BURLINGTON;<br>THE BURLINGTON DEVELOPMENT<br>REVIEW BOARD; CAITLIN HALPERT,<br>in her official capacity; BROOKS<br>McARTHUR, in his official capacity;<br>BRADFORD L. RABINOWITZ, in his<br>official capacity; HARRIS SPRINGER, in<br>his official capacity; SCOTT GUSTIN, in<br>his official capacity,<br>　　Defendants,<br><br>　　and<br><br>BRADLEY M. BIGGIE, in his official<br>capacity; KIM IANELLI, in her official<br>capacity,<br>　　Relief Defendants. | Docket No. 2:21-cv-154 |

### BTC MALL ASSOCIATES, LLC'S MOTION TO DISMISS
### OR, IN THE ALTERNATIVE, TO STAY

Defendant BTC Mall Associates, LLC ("BTC") moves pursuant to Fed. R. Civ. P. 12(b)(1) and12(b)(6) to dismiss Plaintiff 100 Bank LLC's ("100 Bank") complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. In the alternative, BTC moves for a stay of the case pending resolution of parallel proceedings pending in the Vermont Superior Court pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). In support of this Motion, BTC relies on the following incorporated Memorandum of Law.

## MEMORANDUM OF LAW

### Preliminary Statement

This is the *third* legal action 100 Bank has filed (the other two are pending in Vermont state courts) seeking to invalidate a decision of the Burlington Development Review Board ("DRB") approving the latest version of the CityPlace Burlington redevelopment project in downtown Burlington ("City"). Here, as in the state lawsuit 100 Bank filed on the same day, 100 Bank claims primarily that the DRB's decision amounts to an unlawful "taking" of its property—a portion of which is needed for the construction of a section of a new City street included as part of the Project—and that the DRB and BTC deprived it of procedural due process rights and access to the Courts in taking that property.

The Complaint should be dismissed for several reasons, the most fundamental of which is that the DRB's decision on *BTC*'s zoning permit amendment application does not deprive *100 Bank* of any property and is not a "taking." A zoning permit is a finding by a local municipal panel that a particular project is consistent with the municipality's land use policies; it does not affect underlying property rights, and neither the City nor BTC have taken the position that they have the right to develop 100 Bank's property without first securing the necessary property rights. Moreover, even if a zoning permit issued to a third party *could* constitute a taking, 100 Bank's claims are not yet ripe because it has appealed the DRB's authorization to the Vermont Superior Court, Environmental Division, which has the final say on municipal land use decisions in Vermont and will hold a *de novo* merits hearing on BTC's amendment application.

Finally, in the alternative, the Court should abstain from deciding this case under the *Pullman* abstention doctrine because the constitutional issues 100 Bank has raised depend on

questions of state law currently under consideration in two of the state court actions 100 Bank has filed against BTC and the City.

## Background[1]

### I. The Project

The Project is a mixed-use, priority housing project BTC is developing in downtown Burlington that, when finally completed, will include 426 new housing units (including affordable housing), new community space, a state-of-the-art stormwater management system, and the reactivation of a central City block long burdened by an outdated, underperforming shopping mall. Over the last decade, the Project has been the subject of dozens of public meetings and hearings, several votes at Burlington's Planning Commission and City Council, multiple reviews under Burlington's zoning ordinance, and two public ballot initiatives.

Most importantly for present purposes, however, consistent with goals identified in the City's municipal plan and the City's input in the development process, the Project also calls for the reconnection of two City Streets—Pine Street and St. Paul Street—that were disconnected when the now-defunct Burlington Town Center Mall was developed in the 1960s.[2]

As the City points out in its Motion to Dismiss, the DRB approved the Project's original zoning permit in March 2017 (the "2017 DRB Decision"), and after a subsequent appeal by

---

[1] In its Motion to Dismiss filed on July 6, 2021, the City lays out the relevant background underlying this dispute in some detail. Rather than recite that entire factual background here, BTC simply incorporates it by reference, and adds the following, brief overview.

[2] In its Complaint, 100 Bank studiously avoids mentioning that the reconnection of the two City streets has been a part of the Project from nearly the beginning, creating the impression that the need for its property only recently arose. But the Project has called for the use of 100 Bank's property as a City street for many years (even before 100 Bank bought the 100 Bank Street property in 2017). *See* City's Motion to Dismiss at 4-6. Indeed, Burlington voters approved a ballot initiative adding that property to the City's official zoning map as a City street in November 2017 and development of the new streets was approved as part of the Project's prior zoning authorizations in 2017 and 2018 (neither 100 Bank nor the previous owner of the property objected to those authorizations). As 100 Bank well knows, both BTC and the City have long recognized the need to secure the rights to that property—either through negotiation or condemnation—before construction can take place on it.

Project opponents (not including 100 Bank or its predecessor in title to the 100 Bank Street property), the Vermont Superior Court, Environmental Division issued a judgment approving the permit with some changes not relevant here (the "2017 Judgment Order"). Like the present Project design, however, the design approved in the 2017 DRB Decision and the 2017 Judgment Order contemplated the use of a portion of the 100 Bank Street Property to construct the new Pine Street connection. *See* City's Mot. to Dismiss at 4-5; *see also* Judgment Order, *In re Devonwood Investors, LLC 75 Cherry Street*, No. 39-4-17 Vtec (Vt. Super. Ct. Envtl. Div. July 17, 2017) (copy attached as **Exhibit A**).

## II.     The Relinquishment Proceedings

100 Bank alleges that on September 3, 2020, BTC sent the Burlington DRB a letter attempting to "abandon, withdraw and relinquish" the 2017 DRB Decision. Compl. ¶ 24. On September 24, 2020, however, Burlington's Zoning Administrator informed BTC that it could not relinquish the previous zoning authorization because it had been acted upon. *Id*. ¶ 26. BTC appealed that decision to the DRB on September 28, 2020. *Id*. ¶ 30. A hearing on that appeal was deferred several times while BTC and the City resolved a pair of legal actions filed against each other related to the Project development process. *Id*. ¶¶ 39, 60-62. Ultimately, the appeal of the Zoning Administrator's decision on BTC's relinquishment notice was withdrawn.

Nonetheless, 100 Bank claims that the City failed to allow it to meaningfully participate in the proceedings related to BTC's attempt to relinquish its previous zoning permit (the "Relinquishment Proceedings"), primarily by failing to provide 100 Bank with notice of those proceedings. *See generally* Compl. ¶¶ 25-46.

### III. The Zoning Amendment Proceedings

Meanwhile, in late October 2021, after the City had rejected its attempt to relinquish its prior permit, BTC filed with the City an application for an amendment to that permit covering certain changes to the Project's design. *Id.* ¶¶ 31, 59. The DRB held a hearing on BTC's application in March 2021, and issued a decision approving the amendment the same month (the "2021 DRB Decision"). *Id.* ¶¶ 47, 48. 100 Bank acknowledges that it participated in those proceedings—indeed, it submitted multiple letters outlining its position, and sent a representative to testify at the hearing, *see* City Motion to Dismiss at 8-9—but again claims that it was denied its right to procedural due process in those proceedings as well. *See id.* ¶ 47.

### IV. Proceedings at the Vermont Superior Court, Environmental Division

100 Bank appealed the 2021 DRB Decision to the Vermont Superior Court, Environmental Division on March 23, 2021. *See* Notice of Appeal, *In re: 75 Cherry Street*, No. 21-ENV-00022 (Vt. Super. Ct. Envtl. Div. filed Mar. 23, 2021) (copy attached as **Exhibit B**)[3]; Compl. ¶¶ 52, 53 (referring obliquely to the appeal as "subsequent legal proceedings"). That appeal is currently set for trial in the fall of 2021. Compl. ¶ 53.

In the appeal, among many other issues,100 Bank has raised the issue of whether BTC's permit amendment application should be denied because 100 Bank—which, as discussed above, owns property needed for a small section of one of the new City streets—was not a co-applicant for the permit. *See* Amended Statement of Questions, *In re: 75 Cherry Street*, No. 21-ENV-00022 (Vt. Super. Ct. Envtl. Div. filed May 10, 2021) (copy attached as **Exhibit C**). 100 Bank also raised the following issues, which are relevant to the present dispute:

    1.    May BTC obtain an amendment to a permit that it expressly abandoned . . . .

---

[3] This Court may take judicial notice of these public filings for the purpose of establishing the fact of such filings. *Goldberg v. Dufour*, No. 16-CV-21301, 2020 WL 620899, at *11 (D. Vt. Feb. 10, 2020) (citing *Glob. Network Commications, Inc. v. City of N.Y.C.*, 458 F.3d 150, 157 (2d Cir. 2006)).

11. Did the [DRB] approve a Project that made changes to 100 Bank's property knowing the Applicant did not have the consent of 100 Bank to make those changes . . . .

12. Was 100 Bank denied statutory and constitutionally required notice of the proper proceeding to consider the issues raised by 100 Bank . . . .

    h. Was the failure to provide notice of an appeal of a decision related to the abandonment of the permit a violation of 24 V.S.A. § 4464 and the requirements of the United States and Vermont Constitutions?

    i. Was 100 Bank provided with notice of which of the many proceedings that the DRB was actually going to make decisions about the Project?

    j. Did the DRB violate[] 2.4.8 of the CDO by refusing to consider 100 Bank's arguments concerning the Project?

    k. Did the DRB violate[] Section 2.4.8 of the CDO by failing to provide a copy of its decisions to 100 Bank?

    l. Did the DRB and the Administrative Officer violate the requirements of 24 V.S.A. § 4464 and the requirements of the United States and Vermont Constitutions by failing to provide 100 Bank's attorney with notice of the various actions described above after he specifically requested notice?

14. . . . Are there insufficient conditions on the permit to properly protect 100 Bank's property?

*Id*.

The Court has not yet resolved those issues; in fact, 100 Bank is currently seeking invalidation of the permit on those very grounds in its recently-filed Cross Motion for Judgment on the Pleadings. *See* 100 Bank's Response to BTC Mall Associates LLC's Motion to Dismiss and Cross Motion for Judgment on the Pleadings, *In re: 75 Cherry Street*, No. 21-ENV-00022 (Vt. Super. Ct. Envtl. Div. filed June 28, 2021) (copy attached as **Exhibit D**).

**V.    100 Bank's State Court Lawsuit**

After filing its direct appeal of the 2021 DRB Decision to the Vermont Superior Court, Environmental Division, 100 Bank also filed another lawsuit against BTC and the City (on the

same day it filed this action) in the Vermont Superior Court, Civil Division. *See* Compl., *100 Bank, LLC v. BTC Mall Associates, LLC et al.*, No. 21-CV-01519 (Vt. Super. Ct. filed June 9, 2021) (copy attached as **Exhibit E**). In the State Court Lawsuit, 100 Bank raises claims similar to the claims raised here: i.e., that the 2021 DRB Decision should be vacated because it amounts to an unconstitutional taking (or deprivation, for purposes of the due process claims) of its property. In that case, 100 Bank also filed a Motion for Preliminary Injunction. BTC and the City both opposed the Motion for Preliminary Injunction, and the Court held an initial status conference. Deadlines for further briefing on that motion, as well as BTC's and the City's responses to the Complaint, are not due in that action until July 20.

**V.     Relevant Vermont Zoning Procedure**

The purpose of zoning bylaws in Vermont is to "govern the use of land and the placement, spacing, and size of structures and other factors specified in the bylaws related to public health, safety, or welfare." 24 V.S.A. § 4411(a). A zoning permit therefore is a certification from the local land use authority that a particular proposed development, or use, of a property is consistent with the local authority's local land use policies with respect to the "use of land and the placement, spacing, and size of structures and other factors specified in the bylaws related to the public health, safety, or welfare."

In Burlington, consistent with Vermont's statutory procedure, the zoning process begins when a person seeking to "develop" property applies for authorization under the City's Comprehensive Development Ordinance ("CDO"), which contains the City's zoning bylaws. *See* CDO §§ 3.1.2, 3.2.1 (the current version of the CDO can be found at https://www.burlingtonvt.gov/DPI/CDO). Depending on the nature of the project at issue, the application is either reviewed first by the City's Administrative Officer (subject to appeal to the

DRB), or for certain developments, but the DRB in the first instance. CDO §§ 3.2.7, 3.2.8. In either case, the DRB's decision is then appealable by any "interested person," to the Vermont Superior Court, Environmental Division. CDO § 12.2.3; 24 V.S.A. §   Importantly for present purposes, unless the DRB's decision is "on the record"—not applicable here—the Environmental Division hears the appeal *de novo*, holding a new hearing, and "applying the substantive standards that were applicable before the tribunal appealed from." 10 V.S.A. § 8504(h).

## Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a facial challenge to the sufficiency of the plaintiffs' complaint. When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the Court presumes that all well-pleaded allegations are true and views the pleading in the light most favorable to the nonmoving party. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic presentation of the elements of the cause of action will not do." *Id*. The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, documents incorporated by reference in the complaint, and matters of which judicial notice may be taken. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies

heavily upon its terms and effect, thereby rendering the document integral to the complaint."

*Difolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a claim for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings . . . . A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*.

## Argument

I. **The Court should dismiss the Complaint in its entirety.**

    A. **100 Bank has not been deprived of property.**

In Count I of the Complaint, 100 Bank alleges that the 2021 DRB Decision deprived it of a property interest (i.e. the property to be used for a section of the new Pine Street connection (the "Right of Way Property")) without due process. In Count II, 100 Bank alleges that the 2021 DRB Decision affected a "taking" of that property. Both these claims fail, however, because the 2021 DRB Decision—which approved BTC's application for a zoning permit—neither takes nor deprives 100 Bank of any interest in the Right of Way Property.

        1. **The Takings Claim**

To establish a *per se* takings claim under the Fifth Amendment, 100 Bank must demonstrate either that a government regulation has caused it "to suffer a permanent physical invasion of [its] property" or that the it has been deprived of "all economically beneficial use" of that property. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005). To state a "regulatory" takings claim, 100 Bank must allege that the government regulation of its property is "so onerous that its effect is tantamount to a direct appropriation or ouster." *HARR, LLC v. Town of Northfield*, 423 F. Supp. 3d 54, 63-64 (D. Vt. 2019) (quoting *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088-89). 100 Bank's Complaint alleges neither.

9

100 Bank's takings theory is that by approving BTC's application for a zoning permit for a Project that involves the use of 100 Bank's property, the DRB has "taken" that property. The DRB has no authority to condemn property, though, and neither it nor the Environmental Division (which, in the event of an appeal from the DRB, has the final say in whether a zoning application should be approved) have any jurisdiction to decide property issues. *See*, *e.g.*, *In re Woodstock Community Trust & Housing Vermont PRD*, 2012 VT 87, ¶ 40 ("[T]he Environmental Division does not have jurisdiction to determine private property rights.").

In other words, the 2021 DRB Decision simply finds that the Project—including the street designs—is consistent with the City's municipal land use policies, as codified in the CDO. It cannot—and does not—extinguish 100 Bank's rights in the Right-of-Way Property or give BTC the property rights needed to complete the construction of the new City streets on them.[4] *See Blanche S. Marsh Inter Vivos Trust v. McGillvray*, 2013 VT 6 (zoning permit approved by Environmental Division did not prevent neighbor from filing breach of restrictive covenant case over same development in the Civil Division); *Ginsberg v. Cambridge Affordable Housing Corp.*, No. 083196, 2009 WL 3416362, at *1 (Mass. Super. Ct. Oct. 2, 2009) ("By issuing a zoning permit, a [zoning board] does not authorize any illegal conduct by the permit holder such as the anticipated trespass here."). Thus, the 2021 DRB Decision does not authorize a "physical invasion" of 100 Bank's property.[5]

---

[4] Indeed, 100 Bank has acknowledged repeatedly in its filings in the State Takings Litigation that "[t]he DRB has no condemnation authority." Mot. for Prel. Inj. at 11, *100 Bank LLC v. BTC Mall Associates, LLC et al.*, No. 21-CV-01519 (Vt. Super. Ct. filed June 9, 2021) (copy attached as **Exhibit F**); *see also id*. at 12 ("Here, there is simply no authority to order condemnation . . . . [T]he DRB lacks any power to order a taking.").

[5] Of course, as noted above, the Right-of-Way Property was added to the City's Official Zoning Map as a public street by voters in November 2016, giving the City the right to condemn that property before it can be used for anything else. *See generally* 24 V.S.A. § 4421. So while 100 Bank's interest in the Right-of-Way Property is limited, that limitation arises out of the voters' decision to reserve that property for a potential new street five years ago, and not the 2021 DRB Decision.

Nor is the 2021 DRB Decision a "regulatory" taking of 100 Bank's property. In the context of zoning, a "per se" regulatory taking occurs "in the extraordinary circumstances when *no* productive or economically beneficial use of the land is permitted," and a "non-categorical taking" occurs when application of the regulation results in "[a]nything less than a complete elimination of value, or a total loss." *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) (quotations and citations omitted). The classic case of a "regulatory" taking in the zoning context typically involves the denial of a landowner's request to develop its property in a certain way or some other restriction on the landowner's right to develop its own property. *See*, *e.g.*, *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).

But that is not 100 Bank's complaint here. Its claim is that by approving *BTC*'s application for a project involving a piece of its property, the DRB has deprived *100 Bank* of its property rights. Again, though, a zoning permit does not extinguish property rights—if 100 Bank decides that it wants to continue to hold up the Project by refusing to authorize construction of the new street on the right-of-way property, the 2021 DRB Decision does not stop it from doing so. *See McGillvray*, 2013 VT 6. Moreover, 100 Bank's Complaint makes clear that it was not a party to BTC's application, Compl. ¶ 31, and the 2021 DRB Decision therefore does not regulate *100 Bank's* use of the Right-of-Way Property *at all*. 100 Bank is not bound by the conditions in the 2021 DRB Decision or any of the restrictions contained in that authorization. It therefore has not alleged a viable "regulatory takings" claim.

  **2.**  **Procedural Due Process**

100 Bank's Procedural Due Process claim fails for similar reasons. "To state a Due Process claim, a plaintiff must show that: (1) state action (2) deprived him or her of liberty or property (3) without due process of law." *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015).

11

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the "first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

Here, 100 Bank does not appear to allege that it has been deprived of any liberty interest. Instead, its claim is that the 2021 DRB Decision somehow deprived it of its "fee simple" property interest in the Right-of-Way Property. Compl. ¶¶ 102-06. As discussed above, though, that claim fails because the 2021 DRB Decision does not deprive it of any property interest it currently has in the Right-of-Way Property. The Court should dismiss 100 Bank's Procedural Due Process claim.

### B.  100 Bank's claims are not ripe.

Even assuming solely for the sake of argument, however, that the 2021 DRB Decision *could* constitute a taking or deprive 100 Bank of a property interest, 100 Bank's claims still would fail because they are not ripe.

"The Supreme Court has held that a takings claim arising from a local land use dispute is not ripe until the local regulatory body has rendered a 'final decision' regarding the use of the property at issue." *Thomas v. Town of Mamakating, New York*, 792 Fed. App'x 24, 27 (2d. Cir. 2019) (summary order) (quoting *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. Of Scott, Pa.*, 139 S. Ct. 2162 (2019)). And the Second Circuit has "extended the final decision requirement to other constitutional claims relating to land use disputes, including substantive and due process challenges." *Id*. (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,

282 F.3d 83, 88-89 (2d Cir. 2002); *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 515-16 (2d Cir. 2014)).

As discussed above, 100 Bank has appealed the 2021 DRB Decision to the Environmental Division, which has statutory authority to conduct a full, de novo hearing on BTC's application, and is the final decision maker in Vermont for purposes of the ripeness analysis. *See Southview Associates, Ltd. v. Individual Members of Vermont Envtl. Bd.*, 782 F. Supp. 279, 283 (D. Vt. 1991) (noting that the predecessor to the Environmental Division—the Vermont Environmental Board—"sits as the final decision maker on environmental matters in Vermont" (citing *In re Hawk Mtn. Corp.*, 149 Vt. 179, 185 (1988)). Until the proceedings at the Environmental Division are complete, 100 Bank's constitutional claims are not ripe, and the Court should dismiss the Complaint for lack of subject matter jurisdiction.

**II.      The claims against BTC should be dismissed because BTC is not a state actor.**

The Complaint does not plausibly allege that BTC is a state actor for purposes of the conduct about which 100 Bank complains in the Complaint. A plaintiff alleging a deprivation of constitutional rights under 42 U.S.C. § 1983 must establish that the defendant acted "under color of state law." 42 U.S.C. § 1983; *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005). A finding that conduct occurred under color of state law "requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with deprivation [is] a person who may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (emphasis in original).

Here, there is no dispute that BTC is a private entity, and cannot be held liable for constitutional violations under 42 U.S.C. § 1983 on its own. Instead, 100 Bank must

demonstrate that BTC was a "willful participant in join activity with the State or its agents." *Ragosta v. State of Vermont*, 556 F. Supp. 220, 225 (D. Vt. 1981) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)).

In its Complaint, 100 Bank alleges that BTC "was acting to advance the interests of [the City] by building the reconnections" of the two new City streets as a part of the Project, Compl. ¶ 70, and that "BTC became an agent for the City by using the zoning process to obtain approval to build two streets that it would then turn over to the City." *Id*. ¶ 78. But the gravamen of 100 Bank's constitutional claims appears to be that the *DRB* deprived it of property in approving BTC's permit application, not that the City and BTC deprived it of property in planning for the new City streets. *See id*. ¶ 87 ("The DRB authorized the construction of the Pine Street extension on, through, and under 100 Bank's property."). And 100 Bank does not plausibly allege that *BTC* conspired with or otherwise improperly influenced the DRB's decision. The Complaint therefore does not allege that BTC was a "willful participant in joint activity with the State or its agents" that deprived 100 Bank of its constitutional rights and 100 Bank's constitutional claims against BTC therefore fail.

**III.    In the alternative, Court should abstain pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).**

As discussed above, 100 Bank's Complaint fails for failure to state a claim upon which relief may be granted, *see* Part I.A, *supra*, and for lack of subject matter jurisdiction. *See* Part I.B, *supra*. At a minimum, however, the Court should abstain from hearing 100 Bank's claims while its actions at the Vermont Superior Court, Civil and Environmental Divisions are pending because those proceeding could potentially make it unnecessary for this Court to decide 100 Bank's constitutional claims. *See OMYA, Inc. v. Vermont*, 80 F. Supp. 2d 211, 216 (D. Vt. 2000) (applying *Pullman* abstention doctrine).

"The Second Circuit has determined that [the] *Pullman* doctrine is triggered when: 'first, the state statute [is] unclear or the issue of state law [is] uncertain; second, resolution of the federal issue . . . depend[s] upon the interpretation given to the ambiguous state provision; and third, the state law [is] susceptible of an interpretation that would avoid or modify the federal constitutional issue.'" *OMYA, Inc.*, 80 F. Supp. 2d at 216 (quoting *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 584 (2d Cir. 1989). "When *Pullman* applies, the federal court must stay its hand on the federal question until the state law question is resolved by [the] highest state court." *Id*. (citations omitted).

Here, 100 Bank's constitutional claims turn on its theory that a zoning permit issued *to BTC* either authorizes BTC to physically invade its property, or somehow affects a "regulatory taking" of its property (100 Bank's precise rationale on this point is difficult to discern from the Complaint). As discussed above, it is BTC's—and the City's—position that a zoning permit under Vermont law plainly does no such thing and this case should be dismissed for that reason alone. But insofar as the issue is in any way ambiguous, it will be resolved one way or another in the pending Environmental Division case (which will decide whether the zoning permit is authorized in the first place) or the pending Civil Division case (where 100 Bank has made nearly identical claims about the legal effect of a zoning permit). *Pullman* abstention is therefore appropriate pending the outcome of both the Environmental Division and Civil Division cases.

## Conclusion

For the foregoing reasons, BTC respectfully requests that the Court dismiss 100 Bank's Complaint in its entirety, or, in the alternative, that the Court stay this matter pending resolution of the actions filed by 100 Bank in the Vermont Superior Court.

Dated at Burlington, Vermont this 13th day of July, 2021.

                By: _____
                     Brian S. Dunkiel
                     Jonathan T. Rose
                     Dunkiel Saunders Elliott Raubvogel & Hand, PLLC
                     91 College Street
                     P.O. Box 545
                     Burlington, VT 05402-0545
                     (802)860-1003
                     bdunkiel@dunkielsaunders.com
                     jrose@dunkielsaunders.com

                     *Attorneys for BTC Mall Associates, LLC*